**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| WILLIAM WINGO, INDIVIDUALLY AND ON BEHALF OF OTHER SIMILARLY SITUATED; | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | **CIVIL ACTION NO. 2:18-CV-00141-JRG** |
| MARTIN TRANSPORT, INC., | § § | |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Notice to Potential Plaintiffs and Conditional Certification by William Wingo ("the Motion") (Dkt. No. 18), wherein Plaintiff requests the Court: (1) grant conditional class certification; (2) approve the proposed Notice and Consent Forms as drafted by Plaintiff; (3) require Martin Transport, Inc. ("Defendant") to disclose the names, last known mailing addresses, email addresses, and telephone numbers of Potential Plaintiffs within seven days of the entry of this Order; and (4) direct Defendant to post the Notice and Consent Forms at Defendant's facilities that employ Dispatchers. For the following reasons, the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I. BACKGROUND

On April 11, 2018, Plaintiff William Wingo brought suit, individually and on behalf of all others similarly situated, against Martin Transport, Inc. ("Defendant" or "Martin Transport"), alleging that Plaintiff and similarly situated employees "routinely worked in excess of 40 hours per week, but were not paid for all overtime hours worked," in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (Complaint, Dkt. No. 1 ¶ 1.)

Plaintiff filed the present motion on August 27, 2018, alleging that "multiple individuals have already self-selected as similarly situated and elected to join this suit," seeking conditional certification and Notice. (Dkt. No. 18 at 2.) Plaintiff attached proposed Notice and Consent forms.

On October 8, 2018, Defendant filed its response and noted that it did not oppose conditional certification. (Dkt. No. 25 at 1.) However, Defendant objected to: "(1) Plaintiff's proposed notice and consent form; (2) Plaintiff's request to distribute the notice and consent form via email, text message and posting at Defendant's facilities; and (3) Plaintiff's request for disclosure of the email addresses and telephone numbers of potential plaintiffs." (*Id.*) Defendant attached competing versions of the Notice and Consent forms.

## II.     LEGAL STANDARD

Section 216(b) of the Fair Labor Standards Act ("FLSA") authorizes a plaintiff to bring a collective action on behalf of similarly situated persons, provided that any person who desires to become a part of the collective action files a written consent with the court. 29 U.S.C. § 216(b). District courts have the discretionary power to conditionally certify a collective action and to authorize the sending of notice to potential class members pursuant to § 216(b), but certification is not mandatory. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

A court has discretion regarding the form and content of a notice to ensure that potential plaintiffs receive accurate and timely information about the pending collective action. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). Generally, a plaintiff should be allowed to use his preferred language in drafting the notice absent reasonable objections. *Vargas v. Richardson Trident Co.*, 2010 U.S. Dist. LEXIS 15104, at *36 (S.D. Tex. Feb. 22, 2010) (citations omitted). However, a court also has a duty to ensure that the notice does not appear to endorse the merits of the underlying claim. *Hoffmann-La Roche*, 493 U.S. at 174. Indeed, some courts have

found that using the court's name on the notice gives the impression that the court supports plaintiff's lawsuit. *See Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 499 (D. Neb. 2009); *see also Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982) (holding that it was improper for notice to go out on district court letterhead over the signature of a judicial officer because it could be misconstrued as a judicial endorsement of the suit).

## III.  DISCUSSION

### A.  Conditional Certification of the Class

Defendant does not oppose conditional certification of Plaintiff's proposed class, which is:

> All current and former Dispatchers who were/are employed by Martin Transport, Inc. as a non-exempt employee, paid on a salary basis, and worked more than 40 hours in one week at any time during the three-year period preceding the date of the Court's Order.

(Dkt. No. 18 at 9; *see also* Dkt. No. 25 at 1.) Accordingly, Class Certification as noted above is **GRANTED**. Having granted class certification, the Court turns to the content and distribution of the Notice and Consent Forms.

### B.  Objections to the Notice Letter

Defendant makes fifteen objections to Plaintiff's proposed notice letter and submitted their own proposed notice letter that they assert more closely comports with the Court's requirements of neutrality. (*See generally* Dkt. No. 25.)

#### Objection 1: Statement Explaining Purpose

Defendant argues that "[t]he notice does not contain a statement properly and adequately explaining its purpose." (Dkt. No. 25 at 5.)

Plaintiff responds that the first paragraph "does exactly that, explaining to the potential plaintiff: 'You have been identified as an individual who worked for Martin Transport, Inc.

('Martin') as a Dispatcher between August 2015 and the present. This Notice is to inform you that you may be affected by this lawsuit.'" (Dkt. No. 27 at 2.)

The Court finds that Plaintiff's paragraph stating that "This Notice is to inform you that you may be affected by this lawsuit" is insufficient to convey the purpose of the notice letter to the prospective class of plaintiffs. (*See* Plaintiff's Amended Notice Letter, Dkt. No. 27-1, at 1.) However, the Court also finds that Defendant's proposed "Purpose of Notice" inappropriately emphasizes the uncertainty of the action by asserting that "There is no assurance that Wingo or anyone who chooses to join this lawsuit will receive any relief requested." (Defendant's Amended Notice Letter, Dkt. No. 30-1 at 1.) Further, the Court notes that it is customary for the notice of judicial neutrality to be appended to the end of the notice.

Accordingly, the Court **GRANTS** the objection. The Court has altered Defendant's proposed language to better comport with the goal of providing a neutral statement explaining the purpose of the notice letter.

### Objection 2: The Heading

Defendant objects to the heading "If you worked for **Martin Transport, Inc.** as a **Dispatcher**, you may be entitled to **unpaid overtime wages**." (Dkt. No. 25 at 5 (emphasis in original).) Defendant asserts that such heading is both unnecessary and potentially misleading, as it "improperly suggests that Martin has, in fact, unlawfully failed to pay overtime wages owed." (*Id.*)

Plaintiff argues that Defendant failed to elaborate on what was unnecessary or potentially misleading, and that "conditional words like 'if' and 'may' convey uncertainty and make no suggestion as to the validity of the claims against Defendant." (Dkt. No. 27 at 2–3.)

The Court finds that the use of bold and underlined passages in the Plaintiff's proposed heading may be misleading. (*See* Plaintiff's Amended Notice Letter.) The Court further finds that heading should indicate, at a high level, the purpose of the notice.

Accordingly, the Court **GRANTS** the objection, takes Defendant's proposed heading and appends "Regarding Possible Claims for Unpaid Overtime Wages."

### Objection 3: The "Does This Affect Me?" Section

Defendant argues that the "statement that 'This Notice is to inform you that you may be affected by this lawsuit' is incomplete, inadequate, and misleading. It could create the incorrect assumption that the recipient's rights may be adversely effected [sic] by the outcome of the lawsuit if they choose not to join." (Dkt. No. 25 at 5.)

Plaintiff responds that "there is nothing misleading about that sentence; the person receiving it *may* be affected by this lawsuit." (Dkt. No. 27 at 3.) Instead, Plaintiff argues that the "recovery period *erodes daily* as potential plaintiffs' statutes of limitations continue to run." (*Id.* (citing *Gronefeld v. Integrated Production Services, Inc.*, 2016 WL 8673851, at *5 (W.D. Tex. Apr. 26, 2016)).)

Defendant replies that "a potential plaintiff's rights are not affected if he or she chooses not to join the lawsuit. This is important for potential opt-ins to know, which is why courts have routinely included a section in the notice specifically titled 'No Legal Effect In Not Joining This Suit.'" (Dkt. No. 30 at 3 (citing *Juno v. Martin*, No. 2:13-cv-549 (E.D. Tex. Aug. 7, 2014); *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 672–73 (E.D. Tex. 2003); *Vogt v. Tex. Instruments, Inc.*, No. 3:05-cv-2244, 2006 U.S. Dist. LEXIS 67226 at *20 (N.D. Tex. Sept. 19, 2006); *Updite v. Delta Beverage Group, Inc.*, No. CIV A 06-0593, 2006 WL 3718229, at *8-9 (W.D. La. Dec. 15, 2006)).) As to the Statue of Limitations argument, Defendant agreed to delete the sentence stating that "Not joining this lawsuit will not effect [sic] your legal rights in any way" and replace it with "If you

choose not to join this lawsuit, the pendency of this suit will not stop the running of the statute of limitations as to any claim you might have."

In light of the Court's decision to redraft the Statement of Purpose, *see* Section III(B)(1), *supra*, the Court **DENIES** this objection as moot.

## Objections 4 and 5: The "Does This Affect Me?" Section

Defendant argues that the "notice does not contain a proper and adequate description of the claims in the lawsuit. There is no explanation regarding the nature of the claims, and no explanation of Defendant's position." (Dkt. No. 25 at 5.) Defendant further argues that "What's This About?" section is an "incomplete and one-side[d] characterization of the lawsuit [that] suggests that Martin was, in fact, legally required to pay the Dispatcher's overtime and unlawfully failed to do [so]. It fails to provide a neutral description of the claims and defenses in the lawsuit." (Dkt. No. 25 at 5.)

Plaintiff responds that the "What's This About?" section provides a sufficient explanation of the claims. (Dkt. No. 27 at 3.) As to Defendant's position, Plaintiff agreed to add "Martin denies these claims and contends that it pays its Dispatchers in compliance with the law." (Dkt. No. 27 at 4.)

The Court finds that the notice letter should contain a neutral description of the claims and defenses to the lawsuit. *See Whalen v. United States*, 85 Fed. Cl. 380, 389 ("[T]he notice should contain a neutral statement of the claims and the [defendant's] answer."). Accordingly, the Court clarifies Defendant's proposed language as to whether an employee is exempt and adds "Should Wingo prove his case, the participating Dispatchers may receive up to two times the amount of unpaid wages." Accordingly, the Court **GRANTS** the objection as to such issue.

## Objections 6 and 11: The Effects of Joining the Lawsuit

Defendant argues that "the notice fails to adequately inform potential plaintiffs that if they choose to join the lawsuit: (1) they will be bound by any judgment entered in the case, whether it

is favorable or unfavorable; (2) they will be bound by any settlement agreement reached on behalf of the class; (3) they are designating William Wingo to make decisions on their behalf involving the litigation; (4) they may be required to provide information and documents in discovery, and may be required to testify in a deposition and at trial; and (5) they may be liable for a share of Defendant's costs." (Dkt. No. 25 at 5–6.) Defendant further argues that "[t]he notice does not inform the potential plaintiffs that there is no legal effect to not joining the lawsuit. More specifically, it does not state that if potential plaintiffs do not choose to join the lawsuit, they will not be bound by any judgment in the lawsuit, and they have a right to pursue a claim on their own." (Dkt. No. 25 at 7.)

Plaintiff responds that, as to (1) and (2), "the notice clearly states, 'If you **choose to join** this case, you will be bound by its result, whether favorable or unfavorable.'" (Dkt. No. 27 at 4 (emphasis in original).) As to (3), Plaintiff asserts that the accompanying consent form explicitly states "I designate the Class Representative William Wingo and his attorneys (and other persons those individuals designate as necessary) as my representatives to make all decisions on my behalf, to the extent permitted by law . . . ." (*Id.*) As to (4) and (5), Plaintiff asserts that many courts, including those in the Fifth Circuit, have found such language to be dissuasive and therefore should be excluded from any notice. (*Id.* (citing *Bath v. Red Vision Sys., Inc.*, 2014 U.S. Dist. LEXIS, at *21 (D.N.J. May 29, 2014) ("Furthermore, a statement in the notice that highlights the opt-in plaintiffs' discovery obligations and possibility of having to pay defense costs is unwarranted. Such statements have the potential of chilling participation in the collective action."); *Garcia v. Elite Labor Serv., Ltd.*, 1996 WL 33500122 (N.D. Ill. July 11, 1996) (declining to include language that recipient may be subject to discovery or required to testify, in part because such language was potentially intimidating and class members in a class of approximately 1,000 employees were

unlikely to be deposed or testify); *Prentice v. Fund for Pub. Interest Research, Inc.*, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) (declining to include language advising potential plaintiffs of possible obligation to answer interrogatories, be deposed, or testify because "individual discovery is rarely appropriate in FLSA collective actions"); *Earle v. Convergent Outsourcing, Inc.*, 2013 WL 6252422 (M.D. Ala. Sept. 5, 2013) (finding such language unnecessary and atypical); *Reyes v. Quality Logging, Inc.*, 52 F. Supp. 3d 849, 854 (S.D. Tex. 2014)).) Plaintiff further responds that the notice provides: "If you do not wish to join the lawsuit as a plaintiff, you are free to act on your own, or do nothing. If you do nothing, you will not share in any money awarded in the case." (Dkt. No. 27 at 7.)

Defendant replies that "[p]otential plaintiffs should know that if they choose to join the lawsuit, they may be required to provide information and documents in discovery, give a deposition, and appear and testify at trial. That is why courts *routinely* require the notice to inform potential plaintiffs of these facts." (Dkt. No. 30 at 2 (citing *Reyes v. Bona 1372, Inc.*, No. 1:17-cv-16, 2017 WL 5148367, at *10 (E.D. Tex. Oct. 17 2017); *Garcia v. TWC Administration, LLC*, No. SA:14-cv-985-DAE, 215 WL 1737932, at *7 (W.D. Tex. April 16, 2015); *Behnken v. Luminant Mining Co., LLC*, 997 F. Supp. 2d 511, 524–25 (N.D. Tex. 2014)).)

The Court finds that both documents accurately state that prospective plaintiffs will be bound by any judgment or settlement that occurs in the case if they join, and will not be so bound if they do not join. The Court further finds that the notice letter should contain language informing the prospective class that by joining they are designating William Wingo and his attorneys as their agents in this actions. Accordingly, the Court **DENIES** the objection as moot as to such issues.

However, as to discovery obligations, the Court finds that such obligations are likely to be minimal; accordingly, stating that the prospective class members may be required to provide

unspecific information and documents to Martin, to give a sworn deposition, and to appear at trial may have a chilling effect on the prospective class members. Accordingly, the Court **DENIES** the objection and strikes such language from Defendant's notice letter.

Finally, the Court finds that the inclusion of a threat of costs will have a similar chilling effect on prospective plaintiffs. The Court notes that "[c]ourts are divided on the question of whether notice about potential costs to the plaintiffs must be included in the notice." *Reyes v. Bona 1372, Inc.*, No. 1:17-CV-16, 2017 WL 5148367, at *35 (E.D. Tex. Oct. 17, 2017), *report and recommendation adopted*, No. 1:17-CV-16, 2017 WL 5147182 (E.D. Tex. Nov. 6, 2017). However, "[g]iven the involvement of likely unsophisticated opt-in plaintiffs in the instant case, the undersigned follows the approach of cases like *Quality Logging* to recognize the disproportionate '*in terrorem* effect' of provided such notice would outweigh the likelihood such costs will significantly impact the instant case." *Id.* at *36. Accordingly, the Court **DENIES** the objection and finds that discussion of costs should be excluded from this notice letter

### Objection 7: Plaintiff's counsel's fees and costs arrangement.

Defendant argues that "[t]he notice does not apprise the potential plaintiffs of any arrangement/agreement with Plaintiff's counsel regarding attorneys' fees and costs, and the possible impact of any such agreement on their recovery." (Dkt. No. 25 at 6.)

Plaintiff responds that "Defendant cites no case law in support of th[e] objection, which is unnecessary and would only serve to dissuade participation by potential plaintiffs." (Dkt. No. 27 at 5.)

The Court finds that a broad overview of the fee arrangement is instructive to the prospective class. In their proposed notice letter, Plaintiff asserted that "[i]f you join the lawsuit, you will not have to pay the lawyers representing you anything out of pocket, win or lose." (Dkt.

No. 27-1.) Accordingly, the Court **GRANTS** the objection and adds the following language to the "Effect of Joining This Lawsuit" section:

> William Wingo has entered into a contingency fee agreement with Plaintiff's counsel, which means that if there is no recovery, there will be no attorneys' fees or costs chargeable to you. If there is a recovery, Plaintiff's counsel will receive a part of any settlement obtained or money judgment entered in favor of all members of the class and you will not be required to contribute to pay attorneys' fees. You may request a copy of the contingency fee agreement executed by Wingo in this matter from Plaintiff's counsel at the address, telephone number, facsimile number, or email address that appears on Page 1.

### Objection 8: The "What Can I Get" Section

Defendant argues that language in the "What Can I Get" section "is calculated to emphasize only the potential upside to the lawsuit." (Dkt. No. 25 at 6.) Defendant further argues that, by stating that "the workers 'should have received' unpaid wages," the language "improperly suggest[s] that the claim against Martin is valid [and] improperly assumes an award of liquidated damages against Defendant." (*Id.*) Accordingly, the language is "a misleading, one-sided portrayal of the possible effects and consequences of joining the lawsuit." (*Id.*)

Plaintiff responds that the use of conditional language, such as "if the workers win, they may get . . ." indicates a potential recovery, and that the language is therefore proper.

The Court **GRANTS** the objection and finds that the inclusion of a section entitled "What Can I Get" improperly promotes Plaintiff's case by focusing on the potential to enhance damages. However, the Court finds that a discussion of potential damages is valuable to the prospective class. Accordingly, the Court includes the following language in the description of Plaintiff's case: "Should Wingo prove his case, the participating Dispatchers may receive up to two times the amount of unpaid wages."

**Objection 9: The "Can I Be Retaliated Against" Section**

Defendant argues that "anti-retaliation language is unnecessary, and improperly suggests that Martin would retaliate against employees for filing a claim. It is also overbroad and unnecessary to the extent it discusses possible retaliation by employers other than Martin." (Dkt. No. 25 at 6.) Defendant further objects to "having this language in bold type and all capital letters." (*Id.* (citing *Camp v. Progressive Corp*, No. 01-2680, 2002 WL 31496661, at *7 (E.D. La. Nov. 8, 2002)).)

Plaintiff responds that anti-retaliation language is "important to potential plaintiffs right to make an informed decisions [sic] about whether to participate. Further, such statements are frequently requested and approved by courts." (Dkt. No. 27 at 5 (citing *Tutein v. Esteemed Patrol, Inc.*, 2013 WL 8115441 (E.D.N.Y. June 10, 2013) (noting that anti-retaliation language on a notice form is routine)).)

The Court finds that anti-retaliation language is common in FLSA notice letters, *see, e.g.*, *Whalen v. United States*, 85 Fed. Cl. at 391, *Vogt*, 2006 U.S. Dist. LEXIS 67226 at *18, *Belt*, 299 F. Supp. 2d at 672, and notes that Defendant included such a provision in its amended notice letter. (*See* Dkt. No. 30-1 at 3.) The Court alters such language to state:

> It is unlawful for Martin or your current employer to terminate you, or in any manner discriminate, retaliate, or take any adverse action against you because of your participation in this suit. If you believe that you have been penalized, discriminated against, or disciplined in any way as a result of your receiving this notification, considering whether to join this lawsuit, or actually joining this lawsuit, you may contact Plaintiff's counsel or another lawyer of your choosing.

**Objection 10: The "How Do I Make A Claim?" Section**

Defendant argues that the "How Do I Make A Claim?" section "improperly suggests that joining this lawsuit is the only mechanism for potential plaintiffs to make a claim against Martin," "neglects to inform the recipients that, if they do not join this lawsuit, they would be free to bring

a claim against Martin on their own," that the opt-in period should be 45-days, rather than 60, and that the notice should inform potential plaintiffs that the signed consent form needs to be postmarked within that period. (Dkt. No. 25 at 6–7.)

Plaintiff responds that the following "What Are My Choices?" section states "If you do not wish to join the lawsuit as a plaintiff, you are free to act on your own, or do nothing." (Dkt. No. 27 at 6.) Plaintiff further responds that Defendant has not "provide[d] any explanation as to why a 45–day notice period—rather than a 60–day notice period—is appropriate in this case" and that the default period is 60 days. (*Id.*) Finally, Plaintiff agrees to amend the section to include language about postmarking the consent form within the relevant time period. (*Id.*)

The Court finds that a "How to Participate in This Lawsuit" section is useful to the prospective class, which is adequately informed about their rights vis-à-vis joining or not joining the lawsuit via the other sections. *See* Objections 6 & 11, *supra*. The Court further finds Defendant has presented no argument as to why the Court should deviate from the default 60-day opt-in period. *See McCloud v. McClinton Energy Grp., LLC*, No. 7:14-cv-120, 2015 U.S. Dist. LEXIS 20374, at *27–28 (W.D. Tex. Feb. 20, 2015) ("Although opt-in periods commonly range from as little as 30 to as many as 120 days, most courts appear to default to a notice period of 60 days, unless potential plaintiffs are difficult to contact because of their locations or other extenuating factors warrant additional time.").

However, the Court finds that Defendant's language stating that "You do not have to complete or return the Consent Form or take any action unless you want to. It is completely voluntary" is unnecessary. Many aspects of the notice letter, including the divided sections on the effects of joining or not joining the lawsuit, make clear that such an action is voluntary.

Accordingly, the Court strikes such language, along with the language regarding filing the notice with the Court.

## Objection 12: The "What Are My Choices?" Section

Defendant argues that the "What Are My Choices?" Section "does not adequately inform potential plaintiffs of the possible effects and consequences of joining the lawsuit. The contrary, the selective use of bold and underlined terms is specifically designed to encourage the recipient to join the lawsuit, and suggests they will be 'losing out' on possible recovery if they do not do so. It also incorrectly and improperly suggests a 'free ride' for opt-ins by guaranteeing that those who join will not have to pay anything." (Dkt. No. 25 at 7.)

Plaintiff responds that this objection is covered by other sections and that the "'selective use of bold and underlined terms' [] is simply a stylistic objection by Defendant." (Dkt. No. 27 at 7.)

While the Court notes that several other sections "adequately inform potential plaintiffs of the possible effects and consequences of joining the lawsuit," the Court finds Plaintiff's response disingenuous. Plaintiff's "stylistic choice" is clearly designed to emphasize certain aspects of the notice, such as the potential award and the fact that the class does not need to pay the attorneys. Accordingly, the Court **GRANTS** the Motion as to such stylings and removes them from the notice letter.

## Objection 13: The "Can I Get More Information?" Section

Defendant argues that this section "improperly encourages potential plaintiffs to contact Plaintiff's counsel if they have any questions about the notice or consent form," as "the notice and consent form are self-explanatory" and "the purpose of court monitored notices is to control communications with potential plaintiffs." (Dkt. No. 25 at 7.)

Plaintiff responds that "numerous courts" have found that "notices usually include the contact information for the person to whom any inquiries should be directed. Given the court's neutrality in the process, questions are customarily directed to plaintiff's counsel." (Dkt. No. 27 at 7 (citing *Updite v. Delta Beverage Grp., Inc.*, 2006 WL 3718229 (W.D. La. Dec. 15, 2006); *Vogt v. Texas Instruments, Inc.*, 2006 WL 4660134 (N.D. Tex. Sept. 19, 2006); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003); *Solis v. Hotels.com Tex. Inc.*, 2003 WL 22272008 (N.D. Tex. Oct. 1, 2003); *Camp v. Progressive Corp.*, 2002 WL 31496661 (E.D. La. Nov. 8, 2002)).)

Defendant appears to concede this point, as its amended notice letter includes a "Further Information" section wherein Defendant instructs the potential class to contact Plaintiff's counsel with any questions. The Court further finds that the inclusion of such a section is proper. "In FLSA collective actions, plaintiffs' counsel are typically responsible for distributing notice and common sense dictates that potential class members should be able to reach out to plaintiffs' counsel to ask questions as part of their decision making process on whether to join the lawsuit. Accordingly, this Court holds that the notice sent out to prospective class members should include [plaintiffs'] counsel's contact information." *Whalen*, 2018 U.S. Dist. LEXIS 75624, at *26.

However, Defendant has provided no reason why its counsel's contact information is included in the notice. The Court knows of no reason why Defendant's counsel would need to have unreviewed contact with the prospective class of plaintiffs, especially as Defendant directs the prospective class to contact Plaintiff's counsel with any questions. Accordingly, the Court removes Defendant's counsel's information from the notice letter.

### Objections 14 & 15: The Judicial Statement of Neutrality

Defendant argues that "[t]he notice does not contain a proper statement of judicial neutrality which makes it clear that the court takes no position on either (1) the merits of the claims, or (2) the question of whether potential plaintiffs should join the lawsuit." (Dkt. No. 25 at 8.)

Defendant further objects that bolding the statement "creates the appearance of a judicial endorsement of the claims." (*Id.*)

Plaintiff responds that it has resolved these objections with its revised notice. (Dkt. No. 27 at 8–9.)

The Court finds that neither statement of judicial neutrality is sufficient and appends its own statement to the end of the notice letter.

### C.  Objections to the Consent Form

Defendant has two objections to Plaintiff's consent form. First, Defendant argues that the language "purporting to make the consent form valid '. . . in any subsequent action that may be filed on my behalf for such recovery'" is confusing. (Dkt. No. 25 at 8.) Defendant further argues that the consent form "should make it clear that it applies only to this current lawsuit." (*Id.*) Second, "Defendant objects to the consent form because it does not contain an acknowledgement that by joining the lawsuit, the opt-in plaintiff agrees to be bound by any judgment in the case, whether favorable or unfavorable." (Dkt. No. 25 at 8 (citing *Labrie*, 2009 U.S. Dist. LEXIS 25210, at *26).)

Plaintiff responds that such objections were resolved in its amended consent form. (*See* Dkt. No. 27 at 8; Dkt. No. 27-2.)

The Court finds these objections have been resolved by Plaintiff's amended consent form and **DENIES** them as moot.

### D.  Objections to the Methods of Distribution

Defendant argues that Plaintiff's request for distribution by mail, email, text message, and posting is "overbroad, unnecessary, intrusive and prejudicial." (Dkt. No. 25 at 9.) Defendant further argues that many courts have "recognized that first-class mail is the preferred form of distribution, and that other means of notice should be used *only* if there is evidence that mail is

insufficient." (*Id.*) For example, "[m]ail is preferred because it provides a controlled method by which individual notification can be provided through a reliable process that ensures proper notice is received by potential class members." (*Id.* (citing *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Col. 2002) ("Where it is important to ensure that the most accurate notice possible is provided to the proper audience, notification by first-class mail is the preferred method in the unique circumstances of class certification notification. Such a mailing process ensures the integrity of a judicially controlled communication directed to the intended audience.")).)

Defendant also argues that "notification by email is disfavored because of the potential for confusion and misleading potential class members," as emails may be forwarded to outside parties "with commentary that could distort the notice approved by the court." (*Id.* (citing *Reab*, 214 F.R.D. at 91).) Accordingly, "many courts have refused to allow notification by email" because "of the risks inherent in email notification and the sufficiency of notification by email." (*Id.*)

Finally, Defendant argues that "Plaintiff's request for posting of the notice at Defendant's facilities . . . is overbroad and unnecessary." Defendant further argues, without any citation to case law, that "requiring Defendant to post the notice in the same manner as other legally required labor notices create the impression that the lawsuit has merit and/or is endorsed by the court." (*Id.* at 10.)

Plaintiff argues that Defendant only cites to "anachronistic case law," "ignor[ing] the common knowledge that 'today, millions of Americans rely on email as their primary method for communication.'" (Dkt. No. 27 at 8 (quoting *Wade v. Furmanite Am., Inc.*, 2018 U.S. Dist. LEXIS 75624, at *21).) Plaintiff further asserts that "courts in this District routinely agree and authorize mail and email notice" and that "[n]otice via text message is also reasonable and routinely granted by courts for a variety of reasons—including that email and text notice can be a more reliable and

effective way to reach potential plaintiffs." (*Id.* at 8, 9 (citing *Miranda v. Mahard Egg Farm, Inc.*, No. 4:15-cv-406-ALM (E.D. Tex. Apr. 28, 2016); *Reyes v. Bona 1372, Inc.*, No. 1:17-CV-16, 2017 WL 5148367, at *9 (E.D. Tex. Oct. 17, 2017), *report and recommendation adopted*, No. 1:17-CV-16, 2017 WL 5147182 (E.D. Tex. Nov. 6, 2017); *Zachary v. Cobalt Mortgage, Inc.*, No. 4:16-cv-754-ALM (E.D. Tex. Mar. 22, 2017); *Chance v. E. I. du Pont de Nemours and Company*, No. 16-cv-376-MAC-ZJH (E.D. Tex. Dec. 11, 2017), *report and recommendation adopted* No. 16-cv-376 (E.D. Tex. Jan. 8, 2018); *Dickens v. J. G. Wentworth Home Lending LLC*, 4:17-cv-00642-ALM-KPJ (E.D. Tex. Feb. 9, 2018) (Dkt. No. 62)).) As to workplace notification, Plaintiff asserts that recent cases in this District support posted notice as "the burden or expense of posting notice is low because the notice is approved in form and substance by the Court." (*Id.* at 9–10.)

Defendant replies that each case cited by Plaintiff predicated notification via email and text message based on factors such as the transitory nature of the workers in the industry, unusually high employee turnover rates, or the high-tech nature of the business and potential class members, none of which exist here. (Dkt. No. 30 at 4–5.)

The Court finds that distribution via email is appropriate. "The purpose of the notice is to inform potential class members of the lawsuit and provide them the opportunity to join the case." *Wade*, 2018 U.S. Dist. LEXIS 75624, at *20. Accordingly, while "first class mail and home addresses are generally deemed sufficient," *Steinberg v. TD Bank, N.A.*, 2012 U.S. Dist. LEXIS 89086, at *18 (D.N.J. June 27, 2012), sufficiency is not the only goal of the Court. "Over the years, Americans have experimented with various means to deliver messages and notices, including the Pony Express, telegrams, and faxes—all now (or soon to be) considered relics of a bygone era. Truth be told, first class mail is probably heading towards the same fate." *Wade*, 2018 U.S. Dist. LEXIS 75624, at *20." Not only is email used by millions of Americans "as their primary method

for communication," "[e]mail is universally hailed as an effective communication tool and it makes little sense to pretend that it would not be helpful when sending out class notice, especially when it costs absolutely nothing." *Id.* at *21; *see also Gronefeld*, 2016 WL 8673851, at *6 ("[E]mail is not the wave of the future . . . it is the wave of the last decade and a half.").

However, Plaintiff has not convinced the Court that distribution via text message is necessary. Prior courts have limited such distribution to cases where "there is evidence that text messaging is a form of communication previously used by the employer to communicate with its employees," *Butler v. TFS Oilfield Servs., LLC.*, 2017 U.S. Dist. LEXIS, at *20 (W.D. Tex. Sept. 26, 2017), or where there is high turnover in employees, *see Martin v. Sprint/United Mgmt. Co.*, 2016 U.S. Dist. LEXIS 352, at *57–59 (S.D.N.Y. Jan. 4, 2016). The Court sees no reason to deviate from these precedents.

Finally, the Court finds that "[p]osting notice in a workplace is often used to inform employees of their rights in labor disputes and has been approved as an appropriate form of notice in FLSA cases." *Garcia*, 2015 U.S. Dist. LEXIS 50384, at *16 (citing *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 152 (2002); *Pacheco v. Aldeeb*, No. 5:14-CV-121-DAE, 2015 U.S. Dist. LEXIS 40944, at *23–25 (W.D. Tex. Mar. 31, 2015); *Barajas v. Acosta*, No. H-11-3862, 2012 U.S. Dist. LEXIS 74716, at *9–12 (S.D. Tex. May 30, 2012)). Further, the Court finds that posting notice in Defendant's workplace is not unduly burdensome, and that "posting notice in the workplace is a simple and effective way of ensuring that notice reaches all of the putative class members currently employed by [Defendant]." *Id.* at *15.

Accordingly, the Court **GRANTS-IN-PART** the objection.

### E. Objection to Plaintiff's Request for Disclosure of Email Addresses and Telephone Numbers

Defendant objects to disclosing the telephone numbers and email addresses of current and former dispatchers to Plaintiff's attorneys, as the "[d]iscovery of contact information should be limited to information necessary to effectuate the giving of notice." (Dkt. No. 25 at 11.) "Moreover, telephone numbers and email addresses are private and confidential. This highly personal information about persons who may in fact have no interest in this litigation should not be disclosed absent a compelling need, and certainly not simply because Plaintiff's counsel wants it." (*Id.*)

Plaintiff responds that such information is necessary for distributing the notice via email and text. (Dkt. No. 27 at 10.) Further, Plaintiff argues that "'[t]he notion that providing email addresses of potential plaintiffs unnecessarily invades those person's privacy interests is unavailing. . . . Email addresses are freely exchanged and readily available to anyone who makes a concerted effort to uncover such information.'" (*Id.* (quoting *Wade*, 2018 WL 2088011, at *7).)

The Court finds that the Parties agree that Defendant should disclose the information necessary to effectuate the giving of notice. Instead, the objection appears to be a reiteration of the Parties' disagreement as to the methods of distribution. Having found that distribution is proper via mail and email, the Court finds that Defendant should disclose the last known addresses and email addresses of any current or former Dispatchers that worked for Martin within the last three years.

### F. Defendant's "Requested Conditions for the Notice and Consent Process"

#### 1. Defendant's Disclosure

Defendant requests that its disclosure to Plaintiff "be limited to names and last known mailing addresses of individuals who worked as a Dispatcher at Martin at any time from October

10, 2015 to the present. Defendant shall make this disclosure within fourteen (14) days of the entry of an order requiring it. (Dkt. No. 25 at 12.)

Plaintiff requests names and the last known mailing addresses, email addresses, and telephone numbers of potential plaintiffs, but agrees to the remainder of the request. (Dkt. No. 27 at 11.)

As to the disclosure of email addresses, the Court **DENIES** this request as moot in light of its ruling above. *See* Section III(D), *supra*. The Court **GRANTS** the remainder of the request as agreed.

### 2. <u>Reminder Notices</u>

Defendant requests that notice be sent via mail only, and only once. Such notice shall be mailed within seven days of Defendant's production of names and addresses. (Dkt. No. 25 at 12.)

Plaintiff is amenable to the seven-day restriction; however, Plaintiff requests the Court enter an order allowing notice via mail, email, and text message and permit Plaintiff to send a reminder notice to potential plaintiffs. (Dkt. No. 27 at 11 (citing *Dickens v. J. G. Wentworth Home Lending LLC*, 4:17-cv-642-ALM-KPJ (E.D. Tex. Feb. 9, 2018); *Zachary v. Cobalt Mortg., Inc.*, 2017 U.S. Dist. LEXIS 41034 (E.D. Tex. Mar. 22, 2017)).)

Defendant responds that the request to send follow-up postcards was not in Plaintiff's original motion for notice, does not identify the content of any postcard, or offer any reason why it is needed. Further, "[a] follow-up postcard is especially inappropriate and unnecessary given that Defendant's amended proposed notice contains a provision notifying potential plaintiffs that they can contact Plaintiff's attorney if they have any questions or need additional information." (Dkt. No. 30 at 5;) *see also Reyes v. Bona*, 2017 U.S. Dist. LEXIS 183780, at *36–37 ("Though the Plaintiffs have a noble goal, they have failed to identify any reason why a reminder notice is necessary under the particular circumstances of the case."); *Garcia v. TWC Admin., LLC*, 2015

U.S. Dist. LEXIS 50384, at *15 ("Plaintiffs here have not identified any particular reason why a reminder notice is necessary to ensure sufficient notice under the circumstances of this case. The Court thus concludes that a reminder notice is inappropriate in this instance.").

The Court notes that "[t]here is a split among district courts as to whether reminder notices to putative class members are proper in FLSA actions." *Garcia*, 2015 U.S. Dist. LEXIS 50384, at *16 (citing *Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 357-58 (E.D.N.Y. 2012)). However, the purpose of the Notice Letter is "to ensure that potential plaintiffs receive accurate and timely information about the pending collective action. *Hoffmann-La Roche, Inc.*, 493 U.S. at 169-70. The Court finds that the inclusion of a reminder notice furthers the goals of the Notice Letter and permits Plaintiff to send a reminder notice in the form of an email, not less than 10 days from the expiration of the opt-in period. Such notice must be identical to the court approved Notice Letter.

### 3. <u>Notice Dating</u>

Defendant requests that "[e]ach notice shall be dated with the date it is mailed, and Defendant's counsel shall be copied on notices when they are mailed." (Dkt. No. 25 at 12.)

"Plaintiff agrees to provide the Court and opposing counsel with a notice indicating the date on which the notice forms were initially mailed to the Court and Defendant are advised of the beginning of the opt-in period." (Dkt. No. 27 at 12.)

Accordingly, the Court **GRANTS** this requested condition as agreed.

### 4. <u>Postmarking</u>

Defendant requests that the opt-in period shall be 45 days and that all signed consent forms must be postmarked no later than 45 days after the date of the mailing of the notice. (Dkt. No. 25 at 12.)

Plaintiff reiterates its request for a 60-day period under Objection 10 and requests that "consents received by mail without postmarks shall be considered timely if received within five business days of the deadline. Plaintiff shall date stamp the returned consents on the day they are received in counsel's office ('received date'). For statute of limitations purposes the received date will be considered the date the consent form was filed with the Court." (Dkt. No. 27 at 12.)

As to the duration of the opt-in period, the Court **DENIES** this request as moot in light of its resolution of Objection 10. As to consent forms received without a postmark, the Court finds that such consent forms shall be timely if: (1) they are received within three (3) days of the expiration of the opt-in period; and (2) the prospective plaintiff has dated such consent form prior to the expiration of the opt-in period.

### 5.  Deadline to Be Filed With the Court

Defendant requests that signed consent forms be filed with the Court no later than 60 days after the date of the mailing of the notice. (Dkt. No. 25 at 12.)

As part of its request for a 60-day notice period, rather than Defendant's 45-day period, Plaintiff agrees to file such signed consents within 10 days of the close of the opt-in period. (Dkt. No. 27 at 12.)

In light of the Court's resolution of Objection 10, the Court finds that Plaintiff shall file all signed consent forms with the Court no later than 10 days after the close of the opt-in period.

### 6.  Provision of Copies

Defendant requests that it be provided with a "copy of any signed consent form and the postmarked envelope in which the consent form was returned, so that Defendant may verify that the consent form was returned timely." (Dkt. No. 25 at 12.)

Plaintiff responds that it will "retain any envelope or other evidence showing the date the consent form was postmarked, fax-stamped, or received," but that "Defendant will receive a copy

of all signed consent forms when they are filed with the Court by Plaintiff via CM/ECF." (Dkt. No. 27 at 12.) Plaintiff notes that Defendant did not cite to any case law, and that if Defendant has "a question or concern with a particular opt-in plaintiff, Plaintiff will provide a copy of the postmarked envelope (or other evidence showing the date the consent form was received) to Defendant." (*Id.*)

The Court sees no reason to transfer the physical evidence from Plaintiff to Defendant and risk damage to such evidence. If the CM/ECF filings raise a question of timeliness, Plaintiff can be responsible for delivering the physical copy of the letter to the Court for evaluation.

### 7. Type of Signature

Defendant requests that all consent forms be signed by hand and that electronic signatures are not sufficient. (Dkt. No. 25 at 12.)

Plaintiff requests the use of electronic signatures, as was authorized by Magistrate Judge Johnson in *Dickens*. (Dkt. No. 27 at 13.)

In *Dyson v. Stuart Petroleum Testers, Inc.*, Judge Pitman addressed this issue and found against hand signatures for three reasons. First, "the FLSA, unlike Rule 11, does not contain a signature requirement. Rather, it requires that the consent be 'in writing.' Courts have recognized the distinction in the arbitration context, holding that the requirement under the Federal Arbitration Act ('FAA') that an agreement be in writing does not require that the agreement contain a signature." 308 F.R.D. 510, 517 (W.D. Tex. 2015) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (no signature is needed to satisfy FAA's requirement that arbitration agreement be 'in writing'); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) ('FAA requires arbitration agreements to be written, it does not require them to be signed'); *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) (FAA 'does not require that a charter party be signed in order to enforce an arbitration agreement contained within it'); *Perez v.*

23

*Lemarroy*, 592 F. Supp. 2d 924, 930 (S.D. Tex. 2008) (no signatures are necessary to bind parties to arbitration agreement)).

Second, Judge Pitman noted that Congress has already addressed this issue with the Electronic Signatures in Global and National Commerce Act ("E-Sign Act") of 2000, which states that "with respect to any transaction in or affecting interstate or foreign commerce" a "signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. § 7001(a)(1); *see also Dyson*, 308 F.R.D. at 517. Judge Pitman further noted that "under Texas' enactment of the Uniform Electronic Transactions Act, a 'signature may not be denied legal effect or enforceability solely because it is in electronic form' and '[i]f a law requires a signature, an electronic signature satisfies the law.'" *Dyson*, 308 F.R.D. at 517 (citing Tex. Bus. & Com. Code Ann. § 322.007(a), (d)).

Finally, Judge Pitman noted that other courts have permitted electronic signatures on the basis that "'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission.'" *Id.* (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 U.S. Dist. LEXIS 142923, at *15 (M.D. Pa. Oct. 7, 2014)); *see also Bland v. Calfrac Well Servs. Corp.*, 2013 U.S. Dist. LEXIS 113094, at *3 (W.D. Pa. Aug. 12, 2013) (approving without discussion use of signature via e-mail); *White v. Integrated Elec. Tech., Inc.*, 2013 U.S. Dist. LEXIS 83298, at *39 (E.D. La. June 13, 2013) (approving request to allow class members to execute electronic consent forms, noting other "courts have also approved the use of online, electronic signature opt-in forms," and citing cases). Indeed, the Court notes that counsel for the Parties routinely sign their submissions to the Court electronically. (*See, e.g.*, Defendant's Response, Dkt. No. 25, at 13, 14.)

Accordingly, the Court **DENIES** the request and finds that the prospective class members may electronically sign their consent forms. Such electronic signature should be through a service such as DocuSign, and may not merely be "/s/ FirstName LastName."

## IV.    CONCLUSION

For the foregoing reasons, the Court finds the Motion **GRANTED-IN-PART** and **DENIED-IN-PART**.

The Court therefore **ORDERS** that this matter proceed with a collective action with the potential class of plaintiffs described as follows:

> All current and former Dispatchers who were/are employed by Martin Transport, Inc. as a non-exempt employee, paid on a salary basis, and worked more than 40 hours in one week at any time during the three-year period preceding the date of the Court's Order.

The Court further **ORDERS** that Plaintiff shall use the forms attached to this Order to contact the potential class of plaintiffs during the "Opt-In Period"[1]: (1) Notice to Current and Former Dispatchers (Exhibit A); (2) Notice of Consent to Join Lawsuit (Exhibit B).

**IT IS FURTHER ORDERED** that Defendant shall produce the names, last known addresses, and personal email addresses, if known, ("Potential Class Plaintiffs' Information") of current and former Potential Class Plaintiffs. Defendant shall provide the Potential Class Plaintiffs' Information in an Excel or similar electronic format within fourteen (14) days of the entry of this Order. Plaintiff's Counsel shall send the Notice and Consent Form to the Potential Class Plaintiffs within seven (7) days after Defendant provides the Potential Class Plaintiffs Information to Plaintiff's counsel. The Court authorizes and directs Plaintiff to immediately issue the Notice and Consent Form to those individuals whose names are being provided as required by this Order.

---

[1] The "Opt-In Period" refers to the time during which Plaintiff may send out notice and consent forms to the potential class of plaintiffs to include them in this lawsuit.

Plaintiff shall issue the Notice and Consent forms by email or U.S. Mail; however, if the Notice and Consent forms are issued by U.S. Mail, Plaintiff shall provide a self-addressed, postage paid return envelope. Plaintiff's Counsel is also authorized to provide to the Potential Class Plaintiffs the Notice and Consent Form electronically through DocuSign, or a similar service. Plaintiff shall bear the cost of issuing the Notice and Consent forms and any reminder notice.

The Potential Class Plaintiffs shall be provided sixty (60) days after the date the Notice and Consent forms are first emailed (the "Opt-In Period") to file a Consent to Join form opting-in to this litigation. Any re-mailing of the original notice and any reminder notices shall not extend this deadline. Plaintiff shall inform opposing counsel as to the date on which the Notice forms were sent to the Potential Class Plaintiffs. Plaintiff's counsel may email a reminder notice ten (10) days before the expiration of the Opt-In Period.

Plaintiff's counsel shall file signed consent forms with the Court within ten (10) days of the expiration of the Opt-In Period.

Within fourteen (14) days after the close of the Opt-In period, the Parties are directed to confer pursuant to Rules 16(b) and 26(f) to present the Court with a proposed Joint Scheduling Order setting forth proposed dates and covering the items set forth in the Court's previous Docket Control Order. (Dkt. No. 13.) The proposed Joint Scheduling Order should set forth the Parties' agreements concerning how discovery will proceed and how the case will proceed at trial. If the Parties cannot agree on elements of the Joint Scheduling Order, they may present their differing views in the submission for the Court's consideration and determination. The Parties must file the Joint Scheduling Report and Case Management Plan within fourteen (14) days of the deadline for the Parties to confer.

**So ORDERED and SIGNED this 5th day of December, 2018.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE